IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL DUWAYNE SOULIER,

                        Plaintiff,                        OPINION AND ORDER

    v.

                                                         22-cv-3-wmc

OFFICER ERIC SWAN,
BRENDA BOCK,
LUKE KLECZKA,
and MARK ABELES-ALLISON,[1]

                        Defendants.

Plaintiff Michael DuWayne Soulier, representing himself, claims that Red Clif Tribal Police Officer Eric Swan handcuffed him too tightly and subjected him to extreme heat in a squad car before taking him to the Bayfield County Jail, where the remaining defendants denied him medical care. Defendants have filed for summary judgment on the merits of Soulier's claims and, alternatively, argue that they are entitled to qualified immunity. (Dkt. ##47, 58.) Defense counsel for Officer Swan, who sadly passed away last year, also later filed a motion to dismiss Soulier's claims against Swan under Fed. R. Civ. P. 25(a)(1), after plaintiff failed to file a motion for substitution within 90 days of service of a statement noting that defendant's death. (Dkt. #80.) For the following reasons, the court will grant this motion to dismiss and relatedly dismiss Swan's motion for summary judgment as moot, as well as grant summary judgment on the merits in favor of the remaining defendants.

---

[1] The court has modified the caption to reflect the proper spelling of defendants Brenda Bock's and Luke Kleczka's names. (*See* dkt. ##31, 60.)

UNDISPUTED FACTS[2]

Plaintiff Soulier lives in Bayfield, Wisconsin. On July 8, 2020, the high temperature in the area was 82 degrees, and Soulier was riding his son's dirt bike on the Red Cliff Reservation that day when Officer Eric Swan stopped him after a brief pursuit. Swan arrested Soulier for fleeing an officer, handcuffed Soulier, and placed him in a squad car. Soulier maintains that Swan handcuffed him so tightly that the circulation to his hands was cut off. Soulier also asserts that Swan did nothing when he pleaded that the handcuffs were too tight. Soulier further represents that Swan kept him in an "extremely hot police car for about 30 minutes," even though he was "screaming that he could not breathe, flailing and gasping for air." (Dkt. #8 at 3.) In contrast, Swan noted in his contemporaneous, if self-serving, incident report that because it was "hot and humid out," he "turned up the air conditioning in [the] squad to the maximum settings" and "opened the passenger window of the back seat about 5-6 inches during transport so that [Soulier] could get some fresh air circulating." (Dkt. #50-1 at 6.) However, there is no dispute that the windows were up until they departed for the jail, and Soulier maintains that the squad car's air conditioning could not reach the back seat because of a partition between the front and back seats.

---

[2] Unless otherwise noted, the following facts are deemed undisputed based on the parties' proposed findings of fact and responses, or the underlying evidence submitted in support. Soulier objects to nearly all of defendants' proposed findings, but most of his responses not only fail to cite specific evidence, but are largely argumentative or unresponsive. Accordingly, plaintiff's disputes and objections to defendant's proposed facts are overruled unless otherwise noted, and except to the extent knowable based on plaintiff's personal knowledge given his self-represented status. *See* Proc. to be Followed on Mot. For Summ. Judg., § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation).

At the Bayfield County Jail, Soulier was patted down for weapons and drugs and his handcuffs were removed in the pre-booking room. Another defendant, Bayfield County Administrator Mark Abeles-Allison, was not present at the jail that day, and he was not involved in Soulier's booking.[3] Also named as a defendant Captain Luke Kleczka *was* present during Soulier's initial pat-down, but did not participate in the process of booking Soulier into the jail. He also does not recall Soulier complaining of any pain or injury, or appearing to require immediate medical attention. (Dkt. #66 at ¶¶ 7-8.)

Bayfield County Sergeant Brenda Bock, also a named defendant and present in the pre-booking room, recognized Soulier as a former high school classmate. While Soulier specifically recalls telling Sergeant Bock that the handcuffs had been too tight and his hands were numb, she did not observe any cuts, swelling, bruising, or bleeding, nor did Soulier have any apparent difficulty moving his hands, wrists, or fingers. (Dkt. #60 at ¶ 6.) Soulier also asked to see a nurse, saying he felt light-headed, to which Bock responded with the times the nurse was generally available. She also explained that the nurse had already left for the day and would not be back until Friday morning, which was two days later. While Soulier claims that Bock did not make note of his verbal request to be seen by a nurse, and he was not seen that Friday, Bock attests that when Soulier was booked into the jail, he was not experiencing "a medical condition requiring immediate medical attention," and she simply made "small talk" with him during the booking process without any "signs or symptoms of [his] being in need of emergency medical attention." (*Id.* at ¶¶

---

[3] Although not particularly relevant, Soulier does respond generally that he had tried to contact Abeles-Allison "in the past," but the administrator "turned a blind eye." (Dkt. #73 at ¶¶ 35-37.)

3

7, 11.) Regardless, Bock knew that Soulier would undergo a health intake as part of the booking procedure.

As part of the booking process, a nondefendant, Officer Brandon Miller, did in fact complete medical intake forms with Soulier, which a nurse later reviewed. On the day Soulier was booked, his receiving screening form indicates no "symptoms suggesting need for Emergency Service," and with respect to "any other medical problems [jail staff] should know about," Soulier indicated only "anxiety." (Dkt. #63 at 6-7.) Soulier's initial COVID-19 screening form further indicates that he had a normal body temperature of 98.2 degrees, and had no complaints about difficulty breathing, fatigue, a headache, muscle pain, nausea or vomiting. (*Id.* at 5.) In addition, Soulier's second COVID-19 screening completed the following day again indicates a normal body temperature of 98.4 degrees, and although Soulier reported a headache and cough, he reported no muscle pain, fatigue, nausea, vomiting or any issue with his wrists. (*Id.* at 9.) Finally, Officer Miller attests without dispute that Soulier did not ask to see a nurse or medical care provider or complain of pain, nor did he exhibit any obvious pain or bleeding, or visible signs of trauma at any time he spoke with him on July 8 and July 9, 2020.

Nevertheless, Soulier now represents that his hands still felt numb, and he had a headache and was dizzy during the four days he was incarcerated, although conceding that his medical problem list is blank (*id.* at 11), and he never submitted a medical grievance in relation to any injuries caused by defendants on July 8. Moreover, while at the jail, Soulier did call his family regarding his health concerns, and after his release, Soulier sought medical treatment, although the physician's notes from his July 13, 2020, visit to the

4

emergency room due to "intermittent dizziness" indicate no "acute or unstable issues" and state that "[d]izziness with standing becomes more common with age," while "[h]eavy sweating" helps the "body cope with higher temperatures." (Dkt. #52-2 at 9.) Progress notes and charting from medical visits to a clinic from July 29, 2020, through October 8, 2020, also indicate that Soulier reported numbness in his hands, among other issues, and that he had been arrested, put in a hot squad car, and handcuffed. (Dkt. ##55-1 at 3-7.) Soulier further suggests that he suffered "ligament or nerve damage" or "tendon damage" from the handcuffing (dkt. #73 at ¶¶ 12, 21), but provides no formal medical diagnosis to that effect or explanation of the clinical notes.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding whether to grant summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Id*. at 255.

Summary judgment is the "put up or shut up" moment for parties seeking to take their claims to trial. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). To prevail, plaintiff must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish there is a genuine

triable issue, which requires him to "do more than simply show that there is some metaphysical doubt as to the material facts." *Anderson*, 477 U.S. at 256-57, 261. However, those facts must be admissible, making hearsay, speculation, or conclusory allegations cannot defeat summary judgment. *See Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999). A factual dispute can preclude summary judgment, but only if the "facts might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Defendants seek summary judgment on plaintiff's Fourth Amendment excessive force and medical care claims against them. Initially, the court will address plaintiff's claims against Swan before turning to those against the remaining defendants.

**I. Defendant Eric Swan**

To begin, the court must grant defendant Eric Swan's motion to dismiss under Federal Rule of Civil Procedure 25(a)(1). Swan passed away on January 16, 2023. Rule 25(a)(1) provides that if a party to a claim dies, "the action by or against the decedent must be dismissed" *unless* a motion for substitution is "made within 90 days after service of a statement noting the death." On August 4, 2023, defense counsel filed a suggestion of death upon the record identifying counsel for Swan's estate and his personal representative, along with a certificate of service indicating that a paper copy had been served on plaintiff by U.S. Mail. (Dkt. #43.) Unfortunately, plaintiff's deadline to file a motion for substitution passed on November 2, 2023, without word from him.

Almost two months later, on December 29, 2023, plaintiff filed a brief in opposition to Swan's Rule 25(a)(1) dismissal motion. Plaintiff notes that: he filed his lawsuit while

6

defendant Swan was alive; and Swan's "misconduct is still in question." (Dkt. #81 at 1-2.) His only explanation for not timely filing a motion for substitution, however, is that he "was not fully aware of time limits" and is representing himself. (*Id.* at 1.) This explanation is not enough to relieve plaintiff of his obligation. Even now, plaintiff has still not requested to substitute another party for Swan, nor does he request more time to do so. Although Federal Rule of Civil Procedure 6(b) provides that a court *may* extend expired deadlines imposed by the federal rules when the failure to act is a result of "excusable neglect," the suggestion of death sent to plaintiff cited the appropriate federal rule that both set forth the deadline for him to act *and* the consequences of his failure at act (dismissal). Moreover, litigants representing themselves are equally obligated to follow Rule 25(a)(1). *See Franklin v. McCaughtry*, No. 02-C-618-C, 2004 WL 221982, at *1 (W.D. Wis. Feb. 3, 2004), *aff'd*, 110 F. App'x 715 (7th Cir. 2004) (it would be an "uphill battle" persuading the court that the self-represented plaintiff's failure to timely file a motion for substitution was a result of excusable neglect when defense counsel cited Rule 25 in the statement of death sent to plaintiff and filed with the court). It is true that "excusable neglect" under Rule 6(b) is not strictly limited to omissions caused by circumstances beyond a party's control, but plaintiff's failure to at least consult a federal rule cited by defendant in a formal notice is not excusable. *See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (ignorance of the rules generally does not constitute excusable neglect). Accordingly, the court will grant Swan's motion to dismiss plaintiff's claims against him and deny his motion for summary judgment as moot.

7

**II. Defendants Mark Abeles-Allison, Brenda Bock and Luke Kleczka**

Remaining are plaintiff's medical care claims against defendants Abeles-Allison, Bock and Kleczka. Because plaintiff was at the relevant time an arrestee who had not yet received a preliminary hearing, his claims are subject to the reasonableness requirements of the Fourth Amendment. *Ortiz v. City of Chi.*, 656 F.3d 523, 530 (7th Cir. 2011). Courts consider four factors when determining whether an arrestee's medical care was objectively unreasonable: (1) whether the officer has notice of the arrestee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Id.* Plaintiff must also show that the defendants' conduct caused the harm of which he complains. *Id.* at 531.

As a threshold matter, plaintiff has not established that Bayfield County Administrator Abeles-Allison was *personally* involved in or had knowledge of any of the alleged events at the jail. To be held liable for a constitutional violation under § 1983, a defendant must have been personally involved in the constitutional violation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). Indeed, plaintiff concedes that Abeles-Allison was not even at the jail when plaintiff was booked and processed on July 8, 2020, nor has plaintiff produced any evidence that Abeles-Allison knew of any complaints of injury made by Soulier while he was at the Bayfield County Jail. Although plaintiff generally claims that he complained to Abeles-Allison "in the past" about allegedly "uncertified" officers

and "being denied equal protection of the law" without response (dkt. #72 at 3-4),[4] the letters he submitted date back to 2010 and 2011 and address actions by nondefendants (*see* dkt. ##76-4 to 76-8). Further, while plaintiff's ex-wife attests that she "delivered a written complaint" from plaintiff to Abeles-Allison about "unfairness" and a lack of "equal protection of the law," that, too, involved unrelated events in 2010. (Dkt. #75 at ¶ 8.) Thus, plaintiff is purporting to proceed against Abeles-Allison on a denial of medical care claim arising out of events at the jail in 2020 (dkt. #9 at 4) in which he had *no* involvement except for his general supervisory role over all jail employees. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 does not authorize 'supervisory liability'"). Nor must every official "who knows about a prisoner's problem" pay damages. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Because there is no evidence of Abeles-Allison's personal involvement in plaintiff's medical care in July of 2020 at the county jail, he is entitled to summary judgment on the claim against him.

Finally, defendants Bock and Kleczka are entitled to summary judgment in their favor as well. Plaintiff specifically alleges that he complained to Sergeant Bock about feeling lightheaded and his hands feeling numb because his handcuffs were too tight; he also claims to have asked to see a nurse. Although Captain Kleczka was also in the pre-booking room with plaintiff and Bock, plaintiff does not even allege, much less offer

---

[4] Plaintiff states throughout his summary judgment submissions that Officer Swan was "uncertified" and points to Abeles-Allison's assertion that Swan "was never deputized or employed by Bayfield County" to suggest that he lacked the authority to arrest plaintiff in the first instance. (Dkt. #62 at ¶ 3.) However, at the time of plaintiff's arrest, Swan's training record establish that he was a certified Tribal Law Enforcement Officer with the Red Cliff Tribal Police, and plaintiff was arrested on the Red Cliff Reservation. (Dkt. #55-4 at 2.)

evidence as to, what, if anything, Klezcka heard or did about plaintiff's medical concerns. More specifically, there is *no* evidence that Klezcka denied plaintiff any request for medical attention, and again, plaintiff cannot hold a defendant liable simply because he is a supervisor. *Vinning-El,* 657 F.3d at 592.

Even if the court were to assume both defendants heard plaintiff's complaints, the evidence does not establish that it was objectively unreasonable for them to continue the booking process rather than summon medical assistance. To begin, a serious medical need is one that is so obvious that even a lay person like Klezcka or Bock would easily recognize the need for medical attention. *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). However, when Bock examined plaintiff's hands and wrists, plaintiff conceded she saw no visible injuries *and* plaintiff had no difficulty moving his hands, wrists, or fingers. Plaintiff also does not dispute Bock's account that, despite any reported headache or lightheadedness, plaintiff was able to chat normally with Bock during booking without otherwise appearing to be in obvious distress. *Cf. Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999) (breathing problems, chest pains, dizziness, sinus problems, headaches and loss of energy caused by exposure to second-hand smoke were "relatively minor" injuries for Fourteenth Amendment purposes).

Regardless, Bock did not deny him an appointment with a nurse; instead, she explained when the nurse would next be available. While plaintiff contends that Bock also should have "made note of" his request to see the nurse, there is no dispute Bock knew plaintiff would complete a health intake as part of the booking process, and there is no evidence plaintiff presented in medical distress during that intake, much less needed to see

a nurse. To the contrary, plaintiff's body temperature was normal, meaning that he was not suffering from heatstroke, and he did not complain during his health intake of any difficulty breathing, muscle pain, fatigue, nausea or vomiting, nor report any injuries or request medical attention, indicating that any pain or discomfort from his arrest and transport had resolved, at least to the extent there was no reason for defendants to believe plaintiff had a medical injury needing immediate attention.

That plaintiff later complained to his family or an outside medical provider about his medical needs does *not* mean that a basis exists for a reasonable jury to infer that any defendant was aware of those needs. Specifically, a reasonable jury could not conclude, based on the evidence at summary judgment, that plaintiff had a serious medical need requiring treatment, much less that such a need should have been obvious to non-medical jail staff, like defendants Klezcka and Bock during booking, nor that the decision to proceed with booking plaintiff, *knowing* that plaintiff would complete a health intake as part of that process, was thus objectively unreasonable. Nor is there evidence supporting plaintiff's contention that defendants' decision caused or worsened "ligament damage," or any other reported or visible injury. Finally, although plaintiff provides some later outside clinical notes, he does not draw a link to his earlier complaints of tight handcuffs or excessive heat at the time of his arrest. In fact, plaintiff's emergency room visit summary indicates no "acute or unstable issues" and attributes any dizziness when standing and sweating as normal aspects of plaintiff's aging and exposure to higher temperatures. *See Ortiz*, 656 F.3d at 531 (defendants' conduct must have caused the harm). The court must, therefore, grant summary judgment in favor of defendants Klezcka and Bock as well.

ORDER

IT IS ORDERED that:

1) Defendant Eric Swan's motion to dismiss pursuant to Federal Rule of Civil Procedure 25(a)(1) (dkt. #80) is GRANTED and defendant Swan's motion for summary judgment (dkt. #47) is DENIED as moot.

2) Defendants Abeles-Allison, Bock and Kleczka's motion for summary judgment (Dkt. #58) is GRANTED.

3) Plaintiff's motion for assistance in recruiting counsel (dkt. #82) is DENIED as moot.

4) The clerk's office is directed to enter judgment in favor of all defendants and to close this case.

Entered this 18th day of January, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge